**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRADLEY DICHTER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>OPTIMUM COMMUNICATIONS, INC.<br>Defendant. | Civil Action No. 26-cv-7371<br><br>**JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Bradley Dichter, by and through his counsel, and for his Class Action Complaint against defendant Optimum Communications, Inc. (formerly known as Altice USA) ( "Defendant" or "Optimum") alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this proposed class action individually and on behalf of similarly situated consumers against Defendant arising from its unfair and one-sided practice of imposing a mandatory, company-invented "Network Enhancement Fee" (the "NEF")[1] on top of the advertised and agreed-upon price of its broadband internet service. The NEF provides customers with nothing beyond the internet service they already pay for, cannot be declined or avoided, and artificially inflates the true cost of Defendant's internet service.

[1] At some unknown point in time, Optimum charged a NEF of $2.50, which gradually rose to $6.00. Plaintiff's allegations regard all iterations of Defendant's fee and address the same conduct arising from these fees.

2. Defendant advertises to customers a flat monthly rate for internet services. Customers agree to pay those rates for the internet services, but Defendant unilaterally adds to each customer's billing statement an extra-contractual charge—the NEF. Defendant does not disclose the NEF at the time customers purchase their services or in the advertised price for the services. Instead, the NEF appears to new customers only in their shopping cart after they have selected a network plan. After that, it shows up on customers' monthly billing statements as an addition to the monthly price that was advertised.

3. Defendant describes this fee as funding network maintenance, but in reality the NEF is a pretextual charge that funds no additional service and is imposed solely to extract more money from Defendant's customers. Network maintenance is an ordinary cost of providing internet service that is already built into the price customers agree to pay.

4. Defendant secretly tacks on the NEF as a line item separate from the basic contract price of the internet service. The reason for charging its NEF in this manner is clear: the only price that consumers consider and rely upon when conducting price comparisons with similar service providers is the internet service's advertised price. Reasonable consumers cannot be expected to ferret out these hidden fees, which automatically increase the true price of the internet service due to their mandatory nature.

5. Defendant's NEF is a classic example of a company-imposed "junk fee" and serves solely as a profit generator. The NEF is unfair regardless of how, when, or whether it is disclosed: it is a one-sided charge that Defendant unilaterally sets and increases at its sole discretion, that customers cannot negotiate or decline, and for which customers receive nothing in return.

6. Worse yet, Defendant fails to adequately disclose the NEF to its customers in its advertisements, and customers do not discover the true cost of their internet service until after signing up or sometimes, even later on when they receive their bill.

7. By unfairly obscuring the true cost of its internet service, Defendant deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true service costs. In this way, Defendant is able to advertise an artificially lower price for internet service.

8. As a result, Plaintiff and Class members have been injured by Defendant's unfair, abusive, and deceptive practices. Plaintiff brings this action on behalf of himself and the putative Classes and seeks actual damages, punitive damages, and injunctive relief to prevent Defendant from continuing to engage in the illegal practices described herein.

## JURISDICTION

9. This Court has original jurisdiction over this action, among other reasons, under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Classes consist of at least 100 members; (2) at least one member of the proposed Classes resides outside of New York; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction here, regularly conducts business in this District, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## PARTIES

11. Plaintiff Bradley Dichter is a citizen of New York and resident of Nesconset, New York. Plaintiff has maintained an account with Defendant for Defendant's Fiber-Speed Internet Service during all relevant times alleged herein.

12. Defendant Optimum Communications, Inc. is an internet service provider operating in at least twenty-one states with its principal place of business in Long Island City, Queens, New York and provides its internet services under the brand name Optimum in at least 21 states.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. Defendant Deceives Consumers by Advertising its Internet Service at a Fictitiously Low Price, and then Artificially Inflating the True Cost of its Internet Service by Adding a Mandatory, Useless Network Enhancement Fee

13. Defendant is a communications company which operates in at least twenty-one states, including New York.

14. Defendant offers internet services under the brand name Optimum to customers in New York.

15. Defendant advertises all of its internet service plans at flat monthly prices.

16. Once a user selects a service plan, they are prompted to enter their location to check for service availability.

17. Prominently displayed on the webpage is the monthly total for the service. It does not include the NEF.

18. Upon information and belief, Defendant does not show a customer who signs up on its website the full price including the NEF.

19. Once a customer enrolls in Defendant's services, the NEF shows up on their monthly billing statement as a Network Enhancement Fee.

20. The NEF is buried in the middle of a multi-page bill where customers are unlikely to notice it.

21. Further, the NEF is deceptively presented as something separate from the internet service, even though the fee is invented and charged for the same internet service advertised and quoted in the internet service plan. Moreover, the Network Enhancement Fee is listed under the "INTERNET" section of the bill, not under the "TAXES, FEES, & OTHER CHARGES" section.

22. The Network Enhancement Fee is not a separate fee, but rather a double charge for the same internet service promised to Defendant's customers at the quoted and agreed-upon plan price.

23. The NEF is standard on all internet service purchases and uniform across all purchasers.

24. Despite the fact that Defendant automatically charges this fee to all of its customers each month, it does not disclose the fee in the flat-rate monthly internet service price advertised to customers on its website. Defendant falsely advertises its internet services at flat-rate monthly prices and then charges a higher price each month.

25. Furthermore, Defendant never defines or explains the NEF anywhere on its billing statements.

26. Defendant's NEF is nothing more than a hidden "junk fee." Defendant advertised a price for its Internet Service that did not include the NEF, but in reality, charged every consumer a higher monthly price that included the NEF. In this way, Defendant was able to advertise an artificially lower price for its Internet Service in order to acquire more customers.

27. Covertly applied fees like Defendant's NEF are unfair, deceptive, and misleading to consumers because they obstruct their ability to engage in true price comparisons and prevent

them from participating in a fair and competitive marketplace. To illustrate, in 2022, Consumer Reports conducted a year-long study digging into the true cost of home internet services offered by numerous ISPs across the country and concluded that consumers are paying exorbitant bills for broadband services, including through the assessment of "junk fees," like Defendant's NEF.[2]

28. The study identified that "Company-Imposed Fees, aka Junk Fees" largely contributed to the widespread consumer confusion as to the true cost of internet services because they "make it difficult for consumers to budget and compare prices with alternative service options":[3]

> ***Fees.*** ISPs charge a wide range of fees that, together, can add up to a significant portion of the overall cost of service and contribute to the confusion around internet pricing. . . . The unavoidable fees are especially problematic because consumers may belief they are government-imposed when, in fact, many are company-imposed and distinguished from the core service price at the provider's discretion. More than a dozen ISPs were found to charge company-imposed fees—also known as junk fees—under names such as "network enhancement fee," "internet infrastructure fee," "deregulated administration fee," and ***"technology service fee."*** They can surprise consumers when they appear on monthly bills, and can enable providers to raise prices without seeming to violate marketing or contractual price commitments.[4]

29. The danger of junk fees like Defendant's NEF in the broadband market is palpable: "Such fees do a disservice to consumers by muddying the true price of broadband, making it difficult for consumers to compare prices, creating a pretext for providers to advertise low base rates while actually charging higher prices, and enabling providers to raise prices while superficially appearing to honor lower introductory or contractually promised base rates."[5]

---

[2] *See* Consumer Reports, Broadband Pricing: What Consumer Reports Learned from 22,000 Internet Bills, November 17, 2022, available at: *https://advocacy.consumerreports.org/wp-content/uploads/2022/11/FINAL.report-broadband.november-17-2022-2.pdf* (last accessed July 18, 2024).

[3] *Id.* at p.3.

[4] *Id.* at p.4 (emphasis added).

[5] *Id.* at p. 23.

**B. Plaintiff's Experiences**

30. Plaintiff signed up for the 500 Mbps Optimum Internet Service with Defendant for his home located in Nesconset, New York. He also purchased TV and Phone service with the internet plan.

31. In reliance on Defendant's representations, Plaintiff purchased the Optimum Internet service for the price of $90 per month.

32. However, the true cost of the Internet Service was artificially inflated as a result of Defendant's assessment of its mandatory NEF in the amount of $6.00 per month.

33. Plaintiff did not discover the NEF until he received his monthly bill reflecting the Fee.

34. Plaintiff's bill shows his Optimum Internet service charge and $6.00 Network Enhancement Fee listed directly below the Internet charge:

| **Account Details** | | |
|---|---|---|
| **BALANCE LAST STATEMENT** | | 297.10 |
| **PAYMENTS** | | |
| 05/19 | Credit Card Pymt | -297.10 |
| | **Previous Balance** | **$ 0.00** |
| **CURRENT MONTHLY CHARGES** | | |
| **INTERNET** | **Your Promotion is Effective Until 02/07/2025** | |
| 06/08 -07/07 | Optimum Internet<br>500 Mbps | 90.00 |
| | Network<br>Enhancement Fee | 6.00 |
| | Speed Credit | -15.00 |
| | **Total Internet** | **$ 81.00** |

35. Plaintiff would not have signed up for Optimum Internet had he known that the true cost of its Service was not truly $90 per month.

36. If Plaintiff had known the true cost of Defendant's Optimum Internet, he would have chosen another service provider.

### C. The NEF Is an Unfair, One-Sided Charge Regardless of How It Is Disclosed

37. The NEF is not a charge for any separate product or service. It is a charge for the same internet service that customers have already agreed to purchase at the advertised monthly price. Customers who pay the NEF receive no faster speeds, no additional equipment, and no other service that customers would not receive without it.

38. Defendant alone decides whether to charge the NEF, how much to charge, and when to increase it. Upon information and belief, Defendant has raised the NEF from $2.50 to $6.00 per month without negotiating with or obtaining the meaningful consent of its customers and without providing any additional service in exchange.

39. Customers cannot avoid the NEF. It is imposed on every Optimum Internet account, cannot be declined, and is applied to existing customers who have already invested in installation, equipment, and bundled services and who face substantial costs and burdens in switching providers.

40. Because the NEF confers no benefit, is unavoidable, and is set at Defendant's sole discretion, it is unfair and unconscionable even as to a customer who knew of its existence. The NEF permits Defendant to raise the price of its service at will while appearing to honor the price it advertised and promised.

## TOLLING OF THE STATUTES OF LIMITATIONS

41. **Fraudulent Concealment.** Any applicable statutes of limitations have been tolled by Defendant's knowing and active concealment of the facts alleged herein. Defendant omits the NEF from its advertised prices, describes the fee as funding "network enhancement," buries it in the middle of multi-page bills under the "INTERNET" section rather than among taxes and fees, and never defines or explains it. Through these affirmative acts, Defendant concealed that the NEF is a pretextual surcharge for no additional service. Plaintiff and members of the Classes could not reasonably have discovered the true nature of the NEF through the exercise of reasonable diligence.

42. **Discovery Rule.** To the extent applicable, the causes of action alleged herein did not accrue until Plaintiff and members of the Classes discovered, or reasonably could have discovered, that the NEF was not a charge for any network enhancement or other additional service but merely an additional charge for the internet service they had already purchased. Although the NEF appeared as a line item on their bills, Plaintiff and members of the Classes did not know, and had no reasonable means of learning, the pretextual nature of the fee.

43. **Equitable Estoppel and Equitable Tolling.** Defendant was under a continuing duty to disclose the true character and basis of the NEF to Plaintiff and members of the Classes. Because Defendant misrepresented and concealed that information, and because Plaintiff and members of the Classes reasonably relied on Defendant's characterization of the fee, Defendant is estopped from relying on any statute of limitations defense, and any limitations period should be equitably tolled.

44. **Continuing Violation.** Each monthly NEF charge is a separate and independent unfair, abusive, and deceptive act that causes a new injury. A new limitations period therefore

began with each NEF charge, and Plaintiff and members of the Classes may recover for every NEF charge assessed within the limitations period preceding the filing of this action, as tolled.

## CLASS ALLEGATIONS

45. Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), Plaintiff brings this action individually on behalf of himself and as a class action of similarly situated persons, as specifically defined below:

**Nationwide Class**
All Optimum Internet customers in the United States who were charged a "Network Enhancement Fee" by Defendant on or after November 13, 2020.

**New York Class**
All Optimum Internet customers in the State of New York who were charged a "Network Enhancement Fee" by Defendant on or after November 13, 2020.

46. Excluded from the Classes are Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, and employees, members of such persons' immediate families, and the presiding judge(s) in this case and their staff. Plaintiff reserves the right to expand, modify, or amend the class definitions, including by adding one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

47. This case is appropriate for class treatment because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

48. **Numerosity**. At this time, Plaintiff does not know the exact size of the Classes; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members number well into the thousands and thus are so numerous that joinder of all members is

impracticable. The number and identities of the members of the Classes are ascertainable through appropriate discovery of records in Defendant's possession.

49. **Common Questions of Law and Fact Predominate**: There are many questions of law and fact common to Plaintiff and the Classes, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of law and fact include:

a. Whether Defendant's imposition of the mandatory NEF is an unfair and abusive act or practice under N.Y. Gen. Bus. Law § 349, irrespective of how the NEF was advertised or disclosed;

b. Whether during the class period, Defendant deceptively misrepresented and/or omitted the true cost of its Optimum Internet service to consumers through the addition of its mandatory NEF;

c. Whether Defendant's alleged misconduct misled or had a tendency to mislead consumers;

d. Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

e. Whether Plaintiff and members of the Classes were harmed by Defendant's misrepresentations and omissions;

f. Whether Defendant was unjustly enriched;

g. Whether Plaintiff and the Classes have been damaged, and if so, the proper measure of damages; and

h. Whether an injunction is necessary to prevent Defendant from continuing to engage in the wrongful conduct described herein.

50. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff and all members of the Classes have been similarly affected by the actions of Defendant as alleged above.

51. **Adequacy of Representation**: Plaintiff is committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions. Plaintiff will fairly and adequately represent the interests of the Classes and does not have any interests adverse to those of the Classes.

52. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Classes is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class members.

53. Class action treatment is proper, and this action should be maintained as a class action because the risks of separate actions by individual members of the Classes would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendant as the party opposing the Classes; and/or (b) adjudications with respect to individual Class members would, as a practical

matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impede their ability to protect their interests.

54. Plaintiff and the members of the Classes suffered and will continue to suffer harm as a result of Defendant's wrongful conduct. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

## FIRST CLAIM FOR RELIEF
**Violation of N.Y. Gen. Bus. Law § 349**
**(on behalf of Plaintiff and the Nationwide Class and/or, in the alternative, the New York Class)**

55. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

56. New York law applies to the classes because New York has a significant interest in regulating the conduct of businesses operating within its borders. Moreover, Defendant's principal place of business is in New York, which constitutes the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities.

57. Plaintiff brings this action on behalf of a Nationwide Class because the acts and practices occurred in New York, as Defendant operated and continues to operate its scheme from its nerve center in New York.

58. In the alternative, Plaintiff brings this claim on behalf of the New York Class.

59. N.Y. Gen. Bus. Law § 349(a) provides that "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

60. Defendant's advertising and fee practices are consumer-oriented acts or practices in the conduct of business, trade or commerce that are directed at members of the consuming public.

61. Plaintiff purchased Defendant's products and services for personal, family, or household purposes.

62. "An act or practice is unfair when it causes or is likely to cause substantial injury which is not reasonably avoidable and is not outweighed by countervailing benefits to consumers or competition." N.Y. Gen. Bus. Law § 349(a)(1).

63. The monetary loss to Plaintiff and class members from Defendant's NEF is a "substantial injury" under N.Y. Gen. Bus. Law § 349.

64. Defendant's practice of promising internet service at a specific monthly rate but then unilaterally charging an extra-contractual, mandatory Network Enhancement Fee for that same service, as described herein, is an unfair act or practice that causes substantial injury. This practice is unfair independent of the adequacy of any advertisement or disclosure: even a customer who was aware of the NEF would be compelled to pay a company-invented surcharge for the very internet service already covered by the agreed-upon price, and would receive no additional service, upgrade, or benefit in exchange.

65. The injury caused by the NEF is not reasonably avoidable. The NEF is mandatory and is automatically charged to every Optimum Internet customer; customers cannot decline it, opt out of it, or negotiate it. Defendant imposes and increases the NEF on existing customers in the middle of their service relationships, after they have already incurred installation, equipment, bundling, and switching costs, and, upon information and belief, in many areas where customers have few or no comparable alternatives for high-speed internet service. Because, upon information

and belief, other providers also impose company-created fees, shopping elsewhere does not allow consumers to avoid this type of injury.

66. The injury caused by the NEF is not outweighed by any countervailing benefits to consumers or competition. The NEF does not fund any service beyond the internet service customers already purchase, and network maintenance and improvement are ordinary costs of doing business that are already recouped through the advertised service price. Far from benefiting competition, the NEF distorts it by allowing Defendant to advertise artificially low base prices while collecting higher ones, disadvantaging competitors that price their services honestly.

67. The NEF is also one-sided and unconscionable. Defendant reserves to itself the unilateral discretion to set and increase the NEF—as it has done by raising the fee from $2.50 to $6.00 per month—without negotiation, without any corresponding consideration, and without customers' meaningful assent. Customers have no meaningful choice with respect to the NEF, and its terms unreasonably favor Defendant by allowing it to raise the price of its service at will while superficially appearing to honor its advertised and contractually promised rates.

68. The NEF offends established public policy. New York, through N.Y. Gen. Bus. Law § 349, has declared unfair acts and practices unlawful and maintains a strong public policy of protecting consumers from one-sided, pretextual charges that they cannot reasonably avoid. Federal policy is in accord: the Federal Communications Commission's broadband consumer label rules, 47 C.F.R. § 8.1, require providers to present recurring monthly fees together with the price of broadband service so that consumers can understand the true cost of the service. Defendant's practice of splitting a mandatory, company-imposed charge off from the price of the very service it funds is contrary to these policies.

69. An act or practice is "abusive" when:

> (i) it materially interferes with the ability of a person to understand a term or condition of a product or service; or
>
> (ii) it takes unreasonable advantage of:
>
> (A) a lack of understanding on the part of a person of the material risks, costs, or condition of a product or service;
>
> (B) the inability of a person to protect such person's interests in selecting or using a product or service; or
>
> (C) the reasonable reliance by a person on a person engaging in the act or practice to act in the relying person's interests.

N.Y. Gen. Bus. Law § 349(2).

70. Defendant's policy and practice of charging its customers the NEF is also abusive. Specifically, Defendant's website and advertisements materially interfere with the ability of a person to understand the full price of the product or service because Defendant advertises a flat-rate monthly fee for Optimum Internet without clearly disclosing or accurately describing the full cost of the service.

71. Further, Defendant's own monthly account statements materially interfere with customers' ability to understand the terms or conditions of the service, specifically the reason and basis for the NEF. As further described above, the monthly billing statements bury the NEF in the middle of the billing statement under the internet services section and falsely describe the fee as a Network Enhancement Fee, even though it is really just an additional, undisclosed charge for Optimum Internet services.

72. Defendant's practices and policies concerning charging its customers the NEF also take "unreasonable advantage of" Plaintiff's and class members' "lack of understanding . . . of the material risks, costs, or conditions of a product or service." *See* N.Y. Gen. Bus. Law § 349(2)(ii)(A). Specifically, Defendant takes advantage of customers' lack of understanding of the

cost of internet services, or of maintenance of those services, by charging a misleadingly labeled Network Enhancement Fee without disclosing the fee upfront at the time the services are purchased.

73. In addition to, and independent of, its unfair and abusive practices, Defendant committed deceptive acts that violated Section 349, including, but not limited to:

a. Misrepresenting its NEF;

b. Misrepresenting the true cost of its Optimum Internet service; and

c. Covertly adding its NEF to its Internet Service without adequate or fair disclosure.

74. Defendant's imposition of the NEF is, first and foremost, unfair, and it is also abusive and deceptive. These acts and practices are contrary to the public policy of New York, which aims to protect consumers from one-sided, pretextual charges that they cannot reasonably avoid.

75. Defendant's violations were willful and were done as part of a scheme, artifice, or device with intent to defraud, mislead, and deceive.

76. N.Y. Gen. Bus. Law § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

77. Had Plaintiff and the members of the Classes been aware that they were going to be charged the NEF, they would not have entered into such a relationship with Defendant and would not have paid the NEF. Independent of any disclosure, Plaintiff and members of the Classes

were injured because they were compelled to pay a mandatory charge for which they received nothing in return.

78. As a direct and proximate result of Defendant's unfair, abusive, and deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349, Plaintiff and members of the Classes have paid more for Defendant's service than they should have and have suffered monetary damages and substantial injury for which Defendant is liable.

79. Plaintiff and members of the Classes seek actual damages plus interest on damages at the legal rate, as well as all other just and proper relief afforded by N.Y. Gen. Bus. Law § 349. As redress for Defendant's repeated and ongoing violations, Plaintiff and members of the Classes are entitled to, *inter alia,* actual damages, treble damages, attorney's fees, and injunctive relief.

**SECOND CLAIM FOR RELIEF**
**Violation of N.Y. Gen. Bus. Law § 350**
**(on behalf of Plaintiff and the Nationwide Class**
**and/or, in the alternative, the New York Class)**

80. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

81. New York law applies to the classes because New York has a significant interest in regulating the conduct of businesses operating within its borders. Moreover, Defendant's principal place of business is in New York, which constitutes the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities.

82. Plaintiff brings this action on behalf of a Nationwide Class because the acts and practices occurred in New York, as Defendant operated and continues to operate its scheme from its nerve center in New York.

83. In the alternative, Plaintiff brings this claim on behalf of the New York Class.

84. N.Y. Gen. Bus. Law § 350 declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce."

85. Defendant's advertising of its Optimum Internet service at a specific flat monthly rate that was lower than the amount later charged when it added an extra-contractual, undisclosed, and/or inaccurately described Network Enhancement Fee, as described herein, is "false advertising" under GBL § 350-a. As a result, Defendant violated GBL § 350.

86. As a result of the deceptive representations and omissions made by Defendant regarding the price of its Optimum Internet services, Defendant has deceived Plaintiff and the class members.

87. Defendant's deceptive conduct and false advertising occurred in the course of engaging in trade or business.

88. Defendant violated GBL § 350 willfully, maliciously, and/or with reckless disregard.

89. As a direct and proximate result of Defendant's misconduct, Plaintiff and the Classes were injured and suffered damages.

90. Defendant is liable to Plaintiff and the Classes for damages in amounts to be proven at trial.

91. N.Y. Gen. Bus. Law § 350-e provides that "any person who has been injured by reason of any violation of section three hundred fifty or three hundred fifty-a of this article may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred dollars, whichever is greater, or both such actions."

92. Plaintiff and the Classes make claims for actual and statutory damages, attorneys' fees and costs pursuant to GBL § 350-e. Additionally, Plaintiff and the Classes seek injunctive relief to stop the ongoing deceptive advertising.

## THIRD CLAIM FOR RELIEF
**Unjust Enrichment**
**(on behalf of Plaintiff and the Classes)**

93. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

94. To the detriment of Plaintiff and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

95. Plaintiff and the Classes conferred a benefit on Defendant.

96. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

97. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

98. Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

(a) Certifying this matter to proceed as a class action on behalf of the Classes;

(b) Declaring Defendant's practices to be unlawful;

(c) For declaratory and injunctive relief as set forth above;

(d) For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(e) For compensatory damages according to proof;

(f) For statutory damages under N.Y. GBL §§ 349 & 350;

(g) For punitive damages according to proof;

(h) For treble damages under N.Y. GBL § 349;

(i) For reasonable attorneys' fees and costs of suit;

(j) For pre-judgment and post-judgment interest; and

(k) Awarding such other and further relief as this Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 16, 2026

Respectfully submitted,

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
*mreese@reesellp.com*

**KALIELGOLD PLLC**
Jeffrey Kaliel*
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783
*jkaliel@kalielpllc.com*

**KALIELGOLD PLLC**
Sophia Gold*
490 43rd Street, No. 122
Oakland, California 94609
Tel: (202) 350-4783
*sgold@kalielgold.com*

**JENNINGS & EARLY PLLC**
Christopher D. Jennings*
Tyler B. Ewigleben*
Winston S. Hudson*
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Telephone: 501-255-8569
*chris@jenningspllc.com*
*tyler@jenningspllc.com*
*winston@jenningspllc.com*

*Attorneys for Plaintiff and the Classes*

**Pro hac vice to be submitted*